UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

WILLIAM J. "DUKE" HARLOW,

    Plaintiff,

v.                                          No. 5:17-cv-1263-JKP

REED HENSLEY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Reed Hensley's *Motion for Summary Judgment* (ECF No. 53) and evidentiary materials. Plaintiff has responded in opposition (ECF No. 59) with evidentiary materials. Defendant filed a reply. (ECF No. 62). The Court, having reviewed the motion, the responses, and the pleadings and exhibits on file, finds as follows:

**I. Background**

William J. "Duke" Harlow ("Plaintiff") initiated this civil rights action on December 13, 2017, naming Officer Reed Hensley and the City of San Antonio as Defendants. (ECF No. 1). On May 8, 2018, Plaintiff filed his second amended complaint, the operative pleading herein. (ECF No. 29). Plaintiff's second amended complaint alleges claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments stemming from an incident involving San Antonio Police Officer Reed Hensley ("Defendant"). ECF No. 29 at 6 ¶¶ 20-22. Plaintiff's second amended complaint also alleges state law claims for battery and false imprisonment. *Id*. at ¶ 23. Defendant is sued in his individual and official capacities. *Id*. at 1 ¶ 3. Plaintiff seeks actual and punitive damages. *Id*. at 7 ¶ 26. On October 15, 2018, the City of San Antonio was dismissed from the action. (ECF No. 47). On May 13, 2019, Defendant filed the subject motion

for summary judgment. (ECF No. 53). Defendant contends qualified immunity is appropriate because (1) there was probable cause to arrest and (2) the force used to place Plaintiff's vehicle in park and retrieve the keys was reasonable under the circumstances. *Id*. at 5-18.

## II. Legal Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Id*. 477 U.S. at 248. While all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, and all disputed facts are resolved in favor of the nonmovant, the judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party has the burden to "demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law" to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982). Once the moving party has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 (stating that "a scintilla of evidence" is insufficient). Rather, the nonmoving party must identify specific facts that show a genuine issue for trial. *Matsushita*, 475 U.S. at 587. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

**III. Discussion**

**A. Defendant's requests to strike evidence**

In his *Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment* (ECF No. 62), Defendant "requests" the Court strike (1) Sergeant Steven Peterson's statement "McCreless states that the fire truck had set up across the southbound lane of Randolph to help block the crash scene" *Id*. at 2-3; (2) Plaintiff's claim "Defendant Hensley engaged in spoliation of evidence" *Id*. at 4; (3) Plaintiff's characterization of COBAN video recordings as exculpatory *Id*. at 4-5; (4) Plaintiff's assertion "No officer has a producing COBAN body camera of the incident." *Id*. at 5. In assessing Defendant's motion for summary judgment, the Court did not rely on Sgt. Peterson's statement about the position of the fire truck, any claim of spoliation, an assertion that no officer had body camera footage, or the characterization of any COBAN video as being exculpatory. Accordingly, Defendant's motions to strike are DENIED AS MOOT.

**B. Defendant's Motion for Summary Judgment**

**1. Qualified Immunity**

The defense of qualified immunity protects government officials from liability for civil damages in individual-capacity suits unless the officer's conduct was unreasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Ashcroft v. al-Kidd*, 563

U.S. 731, 741 (2011); *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To defeat a defendant's qualified immunity assertion, a plaintiff must prove (1) the defendant violated a federal constitutional or statutory right; and (2) the right was clearly established at the time of the violation. *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (citing *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) and quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)).

In this case, Plaintiff alleges Fourth Amendment violations based on Defendant's conduct during Plaintiff's arrest. Specifically, Plaintiff alleges Defendant used excessive force in apprehending him. The determination of whether an officer's use of force was reasonable under the Fourth Amendment is a fact-based inquiry that requires a careful balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotations omitted)). A court cannot determine whether an officer's conduct was reasonable "without settling on a coherent view of what happened in the first place." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). Here, there is no clear picture of what occurred during the incident.

There is little the parties agree on about the events of December 16, 2015. Plaintiff, then 81-years-old, attests he and his wife were driving home from dinner. As the couple traveled northeast on Randolph Boulevard, they approached an auto accident. Emergency vehicles blocked the road and Plaintiff, along with other vehicles approaching the scene, slowly proceeded to the left to avoid the accident. Plaintiff believed there was a road to his left because

he could see a traffic light in the area of the accident. As Plaintiff proceeded slowly to the left, a man with a flashlight signaled toward Plaintiff's truck. Plaintiff stopped, rolled down his window, and was told to turn around and go back. As Plaintiff attempted to turn around, Defendant appeared and suddenly, without warning or comment, reached into Plaintiff's window, grabbed Plaintiff by his neck and throat, and yelled, "Give me your keys." Defendant proceeded to strike Plaintiff with his right fist, then pulled out his Taser and hit Plaintiff's chest with the Taser, and finally, turned off Plaintiff's truck and removed the keys. Plaintiff and his wife were left sitting in their truck for over an hour before the keys were returned and the couple was permitted to leave. ECF No. 59-1 at 2-4.

Defendant attests while working the accident scene, he heard a firefighter yell, "you can't drive on the wrong side of the road." ECF No. 53-2 at 9. Defendant further attests he "looked back and saw a red pickup," "attempting to go northbound on Randolph Boulevard by way of the southbound shoulder." *Id*. Defendant heard the firefighter instructing the red pickup to turn around and go back, but the driver yelled at the firefighter to get out of the way. *Id*. As the firefighter walked in front of the truck, Defendant heard the truck's engine rev, "saw the pick-up jump forward," and heard the firefighter yell, "Don't run me over.'' *Id*. Defendant went over and stood in front of the truck and again the driver (Plaintiff) "'revved' his engine causing the pick-up to jump forward" as Plaintiff continued to argue with the firefighter. *Id.* at 10. Defendant ordered Plaintiff to put his vehicle in park and turn off the engine, but Plaintiff refused, saying he was going to drive away, so Defendant ordered Plaintiff a second time to turn off the truck and told Plaintiff he was not free to leave. After Plaintiff again refused, Defendant reached "through the open window to place the vehicle in the park position" but Plaintiff grabbed Defendant's shirt. *Id*. In response, Defendant "grabbed" Plaintiff's shirt, "pushed him back into his seat," put

5

the truck in park, told Plaintiff "he was under arrest for driving around the barricade and to exit his vehicle." *Id*. Plaintiff let go of Defendant's shirt so Defendant "opened the driver's side door, grabbed [Plaintiff's] left wrist and ordered him to exit the vehicle because he was under arrest." *Id*. Defendant avers Plaintiff grabbed Defendant's arm and told him "he was not going to allow himself to be put under arrest, and identified himself as a retired SAPD officer." *Id*. Because Plaintiff continued to hold Defendant's left wrist, Defendant drew his Taser and warned Plaintiff he would deploy it. Plaintiff responded, "he could not exit the vehicle because he was old and could not stand for too long." *Id*. Defendant attests he offered to let Plaintiff sit in his vehicle if Plaintiff turned off the engine and surrendered his keys. When Plaintiff refused, Defendant asked another officer to distract Plaintiff's wife—who was holding on to Plaintiff to "keep him inside the vehicle." *Id*. Defendant holstered his Taser, turned off the engine, removed the keys, and allowed Plaintiff to remain in his vehicle. Plaintiff requested a supervisor, whom Defendant summoned before returning to the accident scene. *Id*.

Following the incident, Sergeant Peterson, the supervisor who responded to the scene, investigated the events. ECF No. 59-12. In his report, Sgt. Peterson noted there was no audio or video of the incident in part because Defendant's COBAN microphone was muted. *Id*. at 2. Sgt. Peterson also noted in his report he "assured" Plaintiff he "would be speaking to [Defendant] at length about what happened." *Id*. at 3. At the conclusion of his investigation, Sgt. Peterson "coached" Defendant "on different ways he could have handled this incident" and recommended the "complaint be entered into the Blue Team and be reviewed by Internal Affairs." *Id*. Internal Affairs found Plaintiff's complaint with respect to Defendant's "Conduct and Behavior: Courtesy" was "sustained" and Defendant received verbal counseling. The investigation was closed on December 25, 2015. ECF No. 59-11 at 2.

As revealed by the summary judgment evidence cited, the parties present conflicting accounts of the events that led to Plaintiff's arrest. Because there is no "coherent view of what happened in the first place," the Court cannot determine whether Defendant Officer Hensley's conduct was reasonable. *See Lampkin*, 7 F.3d at 435. Plaintiff and Defendant's diametrically opposed versions of the incident can only be resolved by a fact finder. For this reason, summary judgment with respect to qualified immunity must be denied.

**2. Official Capacity Claims**

Plaintiff avers he "voluntarily dismissed his case against the City of San Antonio, Texas and is now proceeding against Officer Reed Hensley, individually." ECF No. 59 at 2. Consequently, it appears Plaintiff abandoned any claims alleged against Defendant in his official capacity. To the extent Plaintiff maintains any official capacity claims, an official-capacity suit is aimed against the employing governmental entity, not the individual officer. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (internal quotation marks omitted). To establish a municipality's liability under Section 1983, a plaintiff must show the municipality had an inadequate custom or policy in place that acted as the moving force behind a constitutional violation. *See Forgan v. Howard Cty.*, *Tex.*, 494 F.3d 518, 522 (5th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). Here, Plaintiff failed to present evidence of any policy of the City of San Antonio, or its police department, that was the moving force behind any constitutional violation. Therefore, Defendant is entitled to summary judgment on the claims against him in his official capacity.

### 3. Substantive due process claims

When a Plaintiff's false arrest, seizure, and excessive force claims are cognizable under the Fourth Amendment, a court must dismiss any Fourteenth Amendment claims to the extent they purport to be substantive due process claims. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims") (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)). Plaintiff asserts each of his Section 1983 claims under both the Fourth and Fourteenth Amendments. ECF No. 9 at 6. To the extent Plaintiff asserts Fourth Amendment protections apply to state actors by virtue of the Fourteenth Amendment, his Fourteenth Amendment claims survive summary judgment where the underlying Fourth Amendment claims do. *Shaboon v. Duncan*, 252 F.3d 722, 733 (5th Cir. 2001). However, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment claims to the extent they purport to be substantive due process claims.

### 4. State law claims

Defendant moves for summary judgment on the basis that Plaintiff's state law claims for battery and false imprisonment are barred under Section 101.106 of the Texas Tort Claims Act ("TTCA"). ECF No. 53 at 3-5. Defendant asserts the Texas Supreme Court has ruled that any suit, including suits alleging intentional torts, "against a government employee acting within the general scope of his employment must be dismissed" if the suit could have been brought under the TTCA. *Id.* (citing *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011); *Mission Consolidated Independent School Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008)). Because Plaintiff's battery and false imprisonment claims are "based on conduct within the general scope

of Defendant's employment with a governmental unit" (the San Antonio Police Department), Defendant contends those claims "must be considered to be against Defendant in his official capacity only and must be dismissed" pursuant to *Franka* and *Mission*. ECF No. 53 at 5.

Plaintiff responds he is "pursuing causes of action against the Defendant in his individual capacity and not in his official capacity" and he "voluntarily dismissed his suit against the Defendant the City of San Antonio in this case." ECF No. 59 at 3-4. Because Plaintiff neither clarified his allegations nor disputed Defendant's arguments, Plaintiff's state law claims will be dismissed.

## IV. Conclusion

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (ECF No. 53). Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's substantive due process claims, official capacity claims, and state law tort claims. Such claims are DISMISSED with prejudice. Defendant's Motion for Summary Judgment is DENIED with respect to Plaintiff's Fourth Amendment claims. Such claims are RETAINED. It is further ORDERED that Defendant's motions to strike summary judgment evidence (ECF No. 62) are DENIED AS MOOT.

IT IS SO ORDERED.

SIGNED this 8th day of October 2019.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE